IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRUSTEES OF THE NECA-IBEW PENSION BENEFIT TRUST FUND; TRUSTEES OF THE ALTON IBEW-NECA HEALTH AND WELFARE PLAN; TRUSTEES OF THE JOINT APPRENTICESHIP AND TRAINING COMMITTEE; TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND; LOCAL 649 SUPPLEMENTAL UNEMPLOYMENT BENEFIT WELFARE FUND; NECA-IBEW NATIONAL LABOR MANAGEMENT COOPERATION COMMITTEE; ADMINISTRATIVE MAINTENANCE FUND; AND INTERNATIONAL BROTHERHOOD,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUDI SPRINGMAN d/b/a A. C. SPRINGMAN ELECTRIC and A. C. SPRINGMAN ELECTRIC, INC.; AARON SPRINGMAN d/b/a A. C. SPRINGMAN ELECTRIC and A. C. SPRINGMAN ELECTRIC, INC.; and A. C. SPRINGMAN ELECTRIC, INC.,<br><br>Defendants. | Case No. 07-cv-0600-MJR |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**I. Introduction and Procedural Background**

Plaintiffs, the trustees of various employee benefit funds ("the Funds"), brought suit against Defendants, Trudi Springman ("Ms. Springman"), Aaron Springman ("Aaron") and A. C. Springman Electric, Inc., under Sections 502 and 515 of the Employee Retirement Income Security

1

Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, 1145 and under Section 301of the Labor Management Relations Act, as amended, 29 U.S.C. § 185 ("LMRA"). The Funds seek to recover fringe benefit contributions and working dues allegedly owed them by Defendants. On July 7, 2008, the Funds amended their complaint to add Leo M. Springman ("Mr. Springman") doing business as Springman & Son Electrical Contractors and Springman & Son Electrical Contractors, Inc.; Aaron Springman doing business as Springman & Son Electrical Contractors and Springman and Son Electrical Contractors, Inc.; and Springman & Son Electrical Contractors, Inc. As to these additional Defendants, Plaintiffs allege that when the Springman & Son entities succeeded their predecessors, they operated as a single employer and/or as successors to each other and/or as alter egos. As such, the Springman & Son entities were obligated by the provisions of the Collective Bargaining Agreements ("CBAs") to file reports and pay monthly contributions.

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs seek summary judgment against Defendants for the period from March 1, 2005, through May 31, 2008, in connection with the labor performed by all employees in the following amounts: $51,465.68 in unpaid contributions; $2,543.16 in unpaid union working dues; $9,401.16 in liquidated damages; $5,196.39 in interest; and reasonable attorneys' fees, costs and audit fees to be calculated at the conclusion of the case (Doc. 69). The motion is fully briefed and ready for disposition. For all the reasons stated herein, the Court will grant summary judgment on the issue of liability but will reserve on the amount of delinquent contributions due as well as other damages, fees and costs.

## II. Applicable Legal Standards

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled

2

to judgment as a matter of law.  **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986).**  In determining whether a genuine issue of material fact exists, the Court views the record in the light most favorable to – and draws all reasonable inferences in favor of – the non-moving party.

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. *Oest v. Illinois Department of Corrections*, **240 F.3d 605, 610 (7th Cir. 2001)**.  The nonmovant must do more than demonstrate some factual disagreement between the parties.  *Logan v. Commercial Union Ins. Co.*, **96 F.3d 971, 978 (7th Cir. 1996)**.  The issue in dispute must be material.  Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute.  *Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001)**.

Stated another way, only disputes that could affect the outcome of the suit under governing law properly preclude the entry of summary judgment.  *Outlaw* **at 837 (citing** *McGinn v. Burlington Northern R.R. Co.*, **102 F.3d 295, 298 (7th Cir. 1996).** *See also Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 249 (1986) (A factual dispute is "genuine" only when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in his favor.)**.

### III. Analysis

Plaintiffs submit that Defendants are jointly liable for the unpaid contributions due for work performed January 1, 2006, through May 31, 2008, based upon the application of three theories for liability.  First, with respect to Springman Electric and Springman Electric, Inc., Plaintiffs contend that Ms. Springman represented herself to be the "owner" of these Defendants and

3

signed letters of assent binding these Defendants to the CBAs. Plaintiffs submit that she thereby became liable under ERISA § 515 to pay contributions to the employee benefit plans. Second, the Plaintiffs contend that the Springman family created four separate entities with no change in the operations or ownership other than shifting the ownership from the mother/son to the father. Plaintiffs maintain that, under the successor doctrine applied in ERISA cases, each successor became liable for its predecessor's unpaid contributions. Third, Plaintiffs contend that, under the alter ego doctrine, the Springman & Son entities are liable under the CBA and required to report and pay contributions to the employee benefit plans as if they were signatories to the CBA.

  A. **Ms. Springman, Springman Electric and Springman Electric, Inc.**

The Funds submit that Ms. Springman is an employer within the meaning of ERISA and the CBAs, and, as such, she was required to file reports and pay monthly obligations to the benefit plans covered by this complaint at the rates set forth in the CBAs for the benefit of bargaining unit employees.

It is undisputed that on four occasions, between March 2005 and June 2006, Ms. Springman signed letters of assent on behalf of Springman Electric (3/1/05, 4/1/05) and Springman Electric, Inc. (6/1/06).[1] Each letter of assent provided as follows:

> In signing this letter of assent, the undersigned firm does hereby authorize Alton-Wood River Division, IL Chapter NECA as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved Residential [or "inside"] labor agreement between the Alton Wood River IL Chapter NECA and Local Union 649, IBEW. In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements.

---

[1]Ms. Springman signed two letters of assent on June 1, 2006, one to the 2002-2006 residential CBA and one to the 2002-2006 inside CBA. Amended Complaint ¶¶ 11, 12; Doc. 47, Exhibits I, J.

The forms indicate that Ms. Springman "signed for the employer" and as "owner." Under ERISA, an employer is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan[.]" **29 U.S.C. § 1002(2)(B)(5)**.

29 U.S.C. § 1145 provides as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. **29 U.S.C. § 1145**.

In *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, **870 F.2d 1148 (7th Cir. 1989)**, the Seventh Circuit concluded that this provision means "that a plan may enforce the writings according to their terms, if 'not inconsistent with law.'" **870 F.2d at 1149**. The Court reasoned that a "pension or welfare fund is like a holder in due course in commercial law, ... or like the receiver of a failed bank, ... - entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." *Id*. **(internal citations omitted)**. The Court then explained,

> Plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize - perhaps because employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract. *Id.* **at 1151**.

Stated simply, plans are entitled to rely on documents; they project their income based on these representations and determine benefits. Ms. Springman signed the letters of assent, representing herself to be the "owner" of Springman Electric and Springman Electric, Inc. The

Plans were entitled to rely on this representation. Even if Ms. Springman were acting only indirectly, "in the interest of an employer, in relation to the employee benefit plan," she *is* an employer within the meaning of ERISA. **29 U.S.C. § 1002(2)(B)(5)**. The Court concludes that the Funds are entitled to hold Ms. Springman to her written agreement that she was the owner of Springman Electric and A. C. Springman Electric, Inc., and, consequently, liable for contributions to the Funds.

From March 1, 2005 through December 31, 2005, Springman Electric engaged in the electrical construction business - under the ownership and control of Ms. Springman and Aaron - and filed reports and paid contributions as required under the CBAs. On May 23, 2005, Springman Electric, Inc., was incorporated and engaged in the electrical construction business from January 1, 2006, until its involuntary dissolution on October 2, 2006. Springman Electric, Inc., assented to the CBAs retroactive to June 1, 2006, and filed monthly reports from June 2006 through July 31, 2007, but failed to pay contributions. Following the dissolution of Springman Electric, Inc., Ms. Springman and Aaron continued to engage in the electrical construction business as Springman Electric or Springman Electric, Inc.

Springman Electric, Inc., was a successor to Springman Electric and was liable for both Springman Electric's and its own contributions. Other than Springman Electric, Inc., having a corporate form, the entities operated in the same manner - performing the same type of electrical construction work and having a common address, phone number, assets and equipment (E350 Econoline truck, tools, office furniture and equipment), bank accounts, employees (Aaron, James and Ronald Springman) and customers.

 **B.** **Successor liability**

The issue presented is whether Springman & Son and Springman and Son, Inc., are obligated to pay contributions as the successors of Springman Electric and Springman Electric, Inc. The Court will analyze this issue in detail even though Defendants (with the exception of Mr. Springman who responded separately) appear to concede that the businesses are successors. These Defendants contend only that the successor company is not bound to the CBA of its predecessor or liable to comply with the obligations of its predecessor unless the successor is also an alter-ego of the predecessor.

The successor liability doctrine provides an exception to the general rule that assets become free and clear of liabilities upon sale or transfer. ***Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund v. Tameskin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (citing *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1424 (7th Cir. 1993))**.

"Successor liability may be imposed where (1) the successor employer had prior notice of the claim against the predecessor; and (2) there has been substantial continuity in the business operations of the predecessor and the successor." ***Tameskin*, 59 F.3d at 49**. "Notice can be proven not only by pointing to facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances." ***Upholsterers' Intern. Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990) (citations omitted)**. Both elements are satisfied in the current proceeding.

Under the first prong of the test, the facts conclusively show that successor Defendants had prior notice of the claim against the predecessor. Prior to July 31, 2007, when Springman & Son started doing business, Mr. Springman knew that Aaron had not paid the contributions that were owed to the Funds under the CBAs. Additionally, notice may be imputed

to Defendants from the fact that these entities were family businesses, owned and operated by the mother and son and then by the father. *See Chicago District Council of Carpenters Pension Fund v. A.F. McCarthy, Inc.,* **1996 WL 563459, at \*7 (N.D.Ill. 1996) (collecting cases where notice imputed from identity of owners)**.

Under the second prong of the test, the facts also show substantial continuity in the business operations of the predecessor and the successor. Each successor Springman company acquired the assets of its predecessors and continued, without interruption or substantial change, the predecessor company's electrical contracting business. *See Fall River Dyeing & Finishing Corp. v. NLRB,* **482 U.S. 27, 43-45 (1987) (relying upon "totality of the circumstances" to determine substantial continuity and successorship)**.

As with Springman Electric and Springman Electric, Inc., the companies continued to have a common address and phone number, common assets and equipment, common employees and customers, and performed the same type of electrical construction work. Aaron notified Springman Electric's customers of the transition from one entity to another, and none of these entities operated concurrently. Furthermore, retaining the Springman name throughout the company's permutations is a significant sign of substantial continuity. *See Tameskin,* **59 F.3d at 49 (stating that the "assumption of the [alleged predecessor's] corporate identity makes a strong case for substantial continuity")**.

In sum, Springman & Son and Springman & Son, Inc., meet the tests of notice and substantial continuity necessary to impose successorship liability under ERISA and are liable for the unpaid contributions owed by Springman Electric and Springman Electric, Inc.

 **C.**   <u>**Alter ego liability**</u>

Plaintiffs allege that Springman & Son and Springman & Son, Inc., are liable under the CBA and required to report and pay contributions to the employee benefit plans for the periods that they operated as if they were signatories to the CBA.

The successorship and alter ego inquiries are distinct, in that "'[u]nlawful motive or intent are critical inquiries in an alter-ego analysis....'" *International Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (citing *Iowa Express Distribution, Inc. v. NLRB*, 739 F.2d 1305, 1311 (8th Cir. 1984) (quoting *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 24 (1st Cir. 1983)). "The alter-ego doctrine focuses on 'the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.'" *Id.* (quoting *Penntech Papers* 706 F.2d at 24). The successorship and alter ego doctrines "are usually applied to determine whether one employer is required to bargain with a union that represented a former employer's employees." *Id*. "An alter ego relationship is usually found when two entities share 'substantially identical: (1) management and supervision; (2) business purposes and customers; (3) operations; (4) equipment; (5) ownership.'" *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.*, 46 F.Supp.2d 769, 787 (N.D.Ill. 1999) (quoting *Chicago District Council of Carpenters Pension Fund v. Vacala Masonry, Inc.*, 946 F.Supp. 612, 617 (N.D.Ill. 1996). "In addition, there must be an intent to avoid collective bargaining agreement obligations." *Id*.

To use the alter ego theory and pierce a corporate veil under Illinois law, a plaintiff must establish that: (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that adherence to the fiction of separate

9

corporate existence would sanction a fraud or promote injustice. ***International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 736-37 (7th Cir. 2004).**

The first requirement of the test, unity of interest and ownership, has been established above in the successorship discussion. ***Architectural Iron Workers,* 46 F.Supp.2d at 787**. The second requirement can be met by showing "*either* the sanctioning of a fraud (intentional wrongdoing) *or* the promotion of injustice." ***Koch Refining v. Farmers Union Central Exchange*, 831 F.2d 1339, 1345 (7th Cir. 1987)**. For this requirement, the element of sanctioning a fraud or promoting injustice is satisfied by Aaron's admissions, by the timing of the creation of the Springman & Son entities and by Defendants' failure to show any legitimate business reason why the Springman & Son entities were created.

First, Aaron testified as follows:

Q. What exactly did you tell your customers?
A. That I was getting hosed by the IBEW and I had to shut down and that was it.
Q. And that you would continue operations as Springman & Son?
A. No, at first I was just going to shut down and dad decided to bring his company back which he had Springman & Son Construction years ago, he brought it back so the customers would have somebody and I'd have a job.
Q. Is part of why you shut down because you didn't want to pay the contributions that you owed to the fund, the plaintiff fund in this lawsuit?
A. Didn't believe I owed them a lot of it.
Q. Is that a yes?
A. I don't know how you want me to answer that.
Q. I want you to answer it honestly. Is part of the reason you shut down because you owed contributions to the plaintiff funds?
A. Yes, it wasn't worth the headache. Doc. 70-39, Deposition 97:11-98:7.

Aaron explicitly admitted that part of the reason that he shut down his business was that he owed contributions to the Funds. Aaron referred to Springman Electric becoming Springman & Son as "switching over." Moreover, Mr. Springman knew that Aaron had not paid the contributions that

10

were owed prior to July 31, 2007, when Springman & Son started doing business.

Second, the timing of the emergence of Springman & Son, to say the least, suspicious. On July 23, 2007, counsel for the Funds had a letter faxed and mailed to counsel for Aaron Springman, Springman Electric and Springman Electric, Inc. The letter stated that, absent the filing of all past reports and establishing a payment schedule for paying all delinquent contributions, an ERISA lawsuit would be filed on behalf of the Funds seeking an audit and back contributions. The deadline for Springman's counsel to respond was July 27, 2007. Four days after that deadline, July 31, 2007, Springman Electric stopped doing business and Springman & Son emerged.

Third, Defendants have put forward no legitimate business interest - nor can the Court divine a legitimate interest - that was served by the creation of serial electrical contracting businesses.

Based on the close relationship between the Springman & Son entities and the predecessor entities that disregarded their ERISA obligations, Aaron's admissions, the timing of the creation of Springman & Son and the lack of a legitimate business interest, the Court concludes that the two Springman & Son entities are alter egos that were created not for a legitimate business reason but to avoid the obligations under the CBA. In sum, each successor entity is a thinly disguised continuance of its predecessor formed in part to avoid its obligations under the CBA through relatively minor changes in identity or operation. Allowing the Springman & Son entities to adhere to this fiction would both sanction a fraud and promote injustice. As such, this Court finds that the alter ego theory of liability applies to bind the Springman & Son entities to the CBAs entered into by Springman Electric and Springman Electric, Inc., and to render successor Springman

entities liable for the obligations of predecessor entities.

> **D. Whether the claims of the Union, the Administrative Maintenance Fund ("AMF" and the NECA-IBEW National Labor Management Cooperation Committee ("NLMCC") are barred for failure to exhaust**

Defendants contend that the CBAs at issue contain broad and binding grievance and dispute resolution procedures which the Union, the AMF and the NLMCC failed to exhaust. In support of Defendants's position they cite the following provision:

> Section 1.06 - Grievances - All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement. In the even that these two are unable to adjust any matter within 49 hours, they should refer the same to the Labor-Management Committee.

Defendants concede that this rule does not apply to the Funds covered by ERISA; however, the Union, the AMF and the NLMCC are not employee benefit funds covered by ERISA. Defendants submit that, as non-ERISA, third-party beneficiaries, the AMF and the NLMCC take the contracts as they find them and subject to their requirements. According to Defendants, because the Union, the AMF and the NLMCC have failed to exhaust contractual remedies, their claims are barred. Defendants contend that Plaintiffs must itemize and segregate the amounts claimed for these entities and subtract them from the total amount of delinquent contributions claimed by Plaintiffs.

Plaintiffs respond that trustees pursuing collection of delinquent contributions as third-party beneficiaries to the CBA have no right to utilize contractual grievance and arbitration mechanisms - unless the agreement expressly grants that right - because they are not parties to the agreement. Plaintiffs contend that the same rationale applies if non-ERISA Funds are involved; otherwise, these Funds would be deprived of a remedy for the unpaid contributions. Stated another way, according to Plaintiffs, because the CBAs at issue do not expressly grant the AMF and the NLMCC the right to utilize the grievance and arbitration mechanisms for collecting delinquent

12

contributions, these Funds have no duty to exhaust administrative remedies.

As to Local 649, Plaintiffs submit that it had no duty to exhaust contractual remedies because the attempt would be futile. They assert that by failing to file reports, pay contributions or pay union dues, the Springman & Son entities made it clear that they did not believe they were bound by the CBAs and had no obligation to arbitrate. Under these circumstances, Plaintiffs conclude that it would have been futile for Local 649 to attempt to arbitrate the dispute.

First, the Court has already determined - and it is the law of the case - that "Plaintiffs have no duty to exhaust the grievance and arbitration procedures contained in the CBAs because trustees pursuing collection of delinquent contributions, as third-party beneficiaries to the CBA, have no right to use the contractual grievance and arbitration mechanisms unless the agreement expressly grants that right. The CBAs at issue do not expressly grant the Trustees that right." Memorandum and Order, Doc. 28, p. 4.

To expand upon the Court's previous holding, trustees pursuing collection of delinquent contributions, as third-party beneficiaries to the CBA, generally forego arbitration entirely unless the relevant CBA *explicitly* provides them with this right. *Schneider Moving & Storage Co. v. Robbins*, **466 U.S. 364, 372 (1984) (concluding that "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements")**. The provision in the CBA cited by Defendants provides generally for disputes to be resolved by arbitration by the parties to the CBA but does not explicitly provide trustees of non-ERISA funds with a right to arbitrate.

13

Indeed, the same rationale that excludes trustees of ERISA funds from the arbitration requirement must also apply to entities such as the AMF and the NLMCC, or these entities would have no remedy available to them to recover delinquent contributions. They could neither arbitrate the issue of delinquent contributions - because they have no right to do so under the CBA - nor could they otherwise proceed - because they have not exhausted remedies. For these reasons, the Court remains convinced that the AMF and the NLMCC have no duty to exhaust administrative remedies.

As to the Union, the Court agrees with Plaintiffs that it would have been futile for the Union to attempt to arbitrate this dispute. By failing to file reports, failing to pay contributions or union dues and by creating serial business entities to avoid paying contributions, the Springman & Son entities made it clear that they did not believe they were bound by the CBAs - which would include the obligation to arbitrate. *See International Ass'n of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local No. 473 v. SR Industries Corp.*, **704 F.Supp. 835, 840 (N.D.Ill. 1989) ("[A]ny attempt to invoke the contractual procedures would have been futile by the time that the company had made clear its refusal to meet the union demands....")**. Accordingly, even assuming that the union was under an obligation to follow the grievance procedure set forth above, the Court concludes that Plaintiffs' factual submissions demonstrate that pursuit of the grievance procedure would have been futile. *Id.* For this reason, the Court concludes that the union prevails on the futility exception to the exhaustion requirement. *Glover v. St. Louis-San Francisco Ry. Co.*, **393 U.S. 324, 329-330 (1969) ("[T]he exhaustion requirement is subject to a number of exceptions for the variety of situations in which doctrinaire application of the exhaustion rule would defeat the overall purposes of federal labor relations policy.");** *Gallegos v. Mt. Sinai Medical Center*, **210 F.3d 803, 807-808 (7th Cir. 2000) (remarking that district courts have the**

**discretion to require, or not, exhaustion depending on the existence of exceptions,** *e.g.,* **unavailability or futility**).

E. Mr. Springman's liability

Mr. Springman and the Springman & Son entities contend that even if these entities are the alter ego of Springman Electric and Springman Electric, Inc., this fact does not provide any basis for holding Mr. Springman individually liable. Plaintiffs submit that, to the contrary, Mr. Springman is individually liable for the period of time that he operated Springman & Son as a non-corporate entity (August 1, 2007 through August 13, 2007) and for Springman Electric's unpaid contributions under the successor theory.

Because ERISA contains no special rules pertaining to officer or shareholder liability, the Court follows Illinois law on the issue. *Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Systems, Inc.*, **1999 WL 47078, \*8 (N.D.Ill. 1999) (citing** *Levit v. Ingersoll Rand Fin. Corp.*, **874 F.2d 1186, 1193-94 (7th Cir. 1989) (additional citations omitted)**. Under Illinois law, officer or shareholder liability is posited on a finding of the prerequisite conditions discussed above in the alter ego analysis. *Chicago Dist. Council of Carpenters Pension Fund*, **1999 WL 47078, at \*8 (citing** *Pederson v. Paragon Pool Enterprises*, **574 N.E.2d 165, 167 (1st Dist. 1991) (requiring a finding of two prerequisite conditions: "[f]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and, second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."**).

Where, as here, the Court has found that the prerequisites of alter ego liability have been met, it is appropriate to reach Mr. Springman individually. Importantly, although Mr.

15

Springman argues his case eloquently, he has produced no evidence in the form of deposition testimony or an affidavit in which he controverts any of the evidence set forth by Plaintiffs and analyzed above. Accordingly, the Court finds that Mr. Springman is individually liable for contributions owed for the period of time that he operated Springman and Son as a non-corporate entity and for Springman Electric's unpaid contributions.

F. **Defendants' obligations plus interest, liquidated damages and attorneys' fees and costs**

Every employer is required "in accordance with such regulations as the Secretary may prescribe, [to] maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." **29 U.S.C. § 1059(a)(1)**. "[A]n employer's failure to maintain adequate records shifts the burden to the employer to prove that the work performed was covered or not covered." *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, **30 F.3d 692, 696 (6th Cir. 1994) (citing *Combs v. King*, 764 F.2d 818, 826 (11th Cir. 1985) (employer's failure to maintain records under ERISA shifts the burden "to the employer to come forward with evidence of the *precise* amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the [plaintiff's] evidence" in order to avoid a finding that the employer violated its statutory record-keeping duty) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (emphasis added) (additional citations omitted)**. Where trust funds attempt to collect delinquent employer contributions, a presumption lies in favor of the funds regarding proof of the extent of damages. *Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1 Welfare Fund,* **2002 WL 1610980, \*5 (N.D.Ill. 2002)**.

The Court first notes that, in Defendants' joint memorandum in opposition to

Plaintiffs' motion for summary judgment, they did not contest Plaintiffs' calculations (Doc. 72). Only Mr. Springman and the Springman & Son entities have objected to these calculations, contending that Plaintiffs' expert, Brad Soderstrom, should be disqualified. Mr. Springman submits that Plaintiffs failed to timely disclose Soderstrom and failed to make him available for deposition in time to permit Mr. Springman to respond to and/or rebut his testimony and opinions. Plaintiffs reply that Soderstrom is not an expert but a fact witness and, as a result, Plaintiffs were not required to disclose him at an earlier time.

The Court concludes that this issue is not presently capable of resolution and will, accordingly, take it up at the Final Pretrial Conference on April 24, 2009.

### IV. Conclusion

For all of the above-stated reasons, the Court **GRANTS in part and RESERVES in part** Plaintiffs' motion for summary judgment (Doc. 69). The Court **GRANTS** summary judgment on the issue of liability and **RESERVES** on the amount of delinquent contributions due as well as other damages, fees and costs, an issue which the Court will take up at the Final Pretrial Conference.

**IT IS SO ORDERED.**

**DATED this 22nd day of April, 2009**

                                                **s/Michael J. Reagan**
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**